Steven MEADOWS, Respondent,

v.

HAVENS ERECTORS, INC. and Missouri Private Sector Ind. Self Insurers Guaranty Corp, Appellant,

The Austin Company, Respondent.

No. WD 68046.

Missouri Court of Appeals, Western District.

Nov. 20, 2007.

Robert J. Will, Esq., St. Louis, MO, Bart E. Eisfelder, Esq., Kansas City, MO, for Appellants.

Keith V. Yarwood, Esq., Kansas City, MO, for Respondent Meadows.

Brian J. Gordon, Esq., Independence, MO, for Respondents University Physicians and Truman Medical Center.

Charles R. Brown, Esq., Kansas City, MO, for Respondents the Austin Company.

Before HOLLIGER, P.J., LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

## I. Overview

The overriding issue in this case is whether, under Missouri Workers' Compensation Law, for the Industrial Relations Commission to acquire jurisdiction over a claim against a self-insured employer who subsequently becomes insolvent, must an injured employee first file a claim in the U.S. Bankruptcy Court against the employer's estate.

## II. Facts

Respondent, Steven Meadows, was injured while in the employ of Appellant, Havens Erectors ("Erectors"), a wholly-owned and self-insured subsidiary of Havens Steel ("Steel"). Before the date of injury, Steel filed for relief under Chapter 11 of the U.S. Bankruptcy Code. A week after the incident and injury, Erectors pledged all of its assets in favor of its parent, Steel. Meadows filed a claim against Erectors for workers' compensation benefits. The Division of Workers' Compensation ("the Division") entered an award for Meadows. The fact of injury, amount of compensation, and amount of medical expenses, are undisputed upon appeal. The sole issue is whether the Division and the Labor and Industrial Relations Commission (the "Commission") had jurisdiction to enter an award on Meadows's claim. The appellant contends that Meadows's claim must fail for failure to meet a statutory predicate to Section 287.865.5 [1] and, therefore, the Division and Commission were without jurisdiction to enter the award.

Meadows, a fifty-three year old ironworker, dislocated his right shoulder while employed by Erectors, a subcontractor for the Austin Company, on a job at the Kansas City Star. Much of the early wrangling before the Division centered on Austin's responsibility for this injury as a statutory employer. The Division decided that

---

1. All statutory references are to RSMo (Cum. Supp.2005).

Erectors was the responsible employer, and, since it had subsequently become insolvent, the claim was then properly lodged against the appellant, Missouri Private Sector Individual Self–Insurers Guaranty Corporation ("Guaranty Corporation") who statutorily stepped into the shoes of Erectors, the then-insolvent, self-insured employer.

Meadows's doctor performed arthroscopic surgery and sent him to therapy. Because Erectors did not pay for his therapy, Meadows paid those bills himself. Erectors paid neither compensation benefits nor some $13,000 in medical bills. When Meadows was allowed to return to work without restrictions, he was laid off. The Commission found Meadows suffered a twenty-five percent permanent partial disability to his right shoulder.

This appeal is brought by Guaranty Corporation, a not-for-profit corporation created pursuant to Section 287.860.1 for the purpose of insuring against the insolvency of its members, Missouri employers who maintain self-insurance for workers' compensation claims. To that end, Guaranty Corporation manages an Insolvency Fund "created for purposes of meeting the obligations of insolvent members incurred while members of the corporation and after the exhaustion of all assets including any bonds, escrow deposits, insurance or reinsurance." Section 287.867.2. Under the express provision of Section 287.865.5, Guaranty Corporation is charged with paying compensation to the employees of insolvent members resulting from accidents and injuries to the extent of covered claims existing prior to the members' insolvency.

Erectors, the nominal appellant here, was a self-insured member of Guaranty Corporation. On March 18, 2004, Steel, its parent, filed a voluntary petition with the U.S. Bankruptcy Court for relief under Chapter 11. Erectors, Meadows's employ-

er, is not and has never been the subject of a bankruptcy proceeding.

On May 3, 2004, Meadows had been an employee of Erectors for approximately a week and half when he was injured in the course of his employment. Erectors sent Meadows for medical treatment for injuries to his shoulder. One week later, on May 10, 2004, Erectors pledged all of its assets as collateral for funding extended to Steel.

On July 4, 2004, Erectors's accounts were frozen and the company stopped making payments on various workers' compensation obligations for which it was self-insured. An officer of Erectors informed Guaranty Corporation that the company's liabilities exceeded its assets. In a letter to the Division dated November 16, 2005, the appellant Guaranty Corporation found Erectors was insolvent. The Division adopted Guaranty Corporation's finding pursuant to Section 287.877.2. The finding of insolvency triggered Guaranty Corporation's obligation to pay the workers' compensation claims of injured Erectors employees.

## II. PROCEDURAL POSTURE

Meadows filed his claim for workers' compensation benefits on October 21, 2004. He also filed a proof of claim in the Steel bankruptcy case on October 22, 2004, identifying the debtor in that case as Erectors. Erectors filed an amended answer to Meadows's claim on November 22, 2004, asserting, as one defense, that the Division was without jurisdiction to hear the claim as Meadows failed to file a "claim before a court of competent jurisdiction," a statutory predicate of Section 287.865.5.

The day before his workers' compensation claim was heard by an administrative law judge on January 10, 2006, Meadows received notice that Erectors was insol-

vent. The Austin Company, represented by counsel, appeared at the hearing, but neither Erectors nor Guaranty Corporation appeared. On February 10, 2006, Erectors and Guaranty Corporation filed a motion asking for a stay of the proceedings, again claiming the Division lacked jurisdiction to conduct the hearing. A hearing was held on Guaranty Corporation's motion on March 3, 2006, after which the motion was denied and the administrative law judge entered judgment for Meadows in the total amount of $47,935.23. The Commission adopted the decision of the Division with minor changes. This appeal by Guaranty Corporation followed.

## III. DISCUSSION

■ "This Court reviews decisions of the Commission which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment." *Headrick v. Jackes–Evans Mfg. Co.*, 108 S.W.3d 114, 117 (Mo. App.2003). "Review of legal determinations is *de novo*, and issues involving the interpretation of statutory language are questions of law." *Id.*

■ Guaranty Corporation first claims that Section 287.865.5 required Meadows to make a timely claim against Erectors in a court of competent jurisdiction over the delinquency or bankruptcy proceedings of the insolvent employer. Guaranty Corporation maintains that because Meadows failed to file a proof of claim, there is no incident giving rise to a claim for compensation that Guaranty Corporation would be required to pay. Therefore, the award of the Division was in error.

Section 287.865.5 provides that an employee making a workers' compensation claim against an insolvent, self-insured employer must, "make timely claim for such payments according to procedures set forth by a court of competent jurisdiction

over the delinquency or bankruptcy proceedings of the insolvent member." This requirement arises from Guaranty Corporation's co-extensive liability with the insolvent employer, in that:

> Guaranty Corporation is like an excess insurer who is only liable to the extent the Debtor cannot pay. Logically, to help defray the burden assumed by the Guaranty Corporation, an injured worker is required to 'make a timely claim for payment'—i.e., become an unsecured creditor of the estate in the hopes of receiving a distribution from the sale of assets, which amount is subtracted from the Guaranty Corporation's future compensation obligation.

*In re Wire Rope Corp. of Am., Inc.*, 300 B.R. 1, 10 (Bankr.W.D.Mo.2003).

■ A workers' compensation claimant must file a proof of claim, as an unsecured creditor, in a bankruptcy proceeding pending against the employer in order to protect any recovery from the debtor that could offset Guaranty Corporation's obligation. Where, as here, the employer is not, and will not be, subject to a bankruptcy proceeding, the requirement of the proof of claim has no effective purpose as no recovery can be had. Accordingly, in such a situation the proof of claim requirement should not serve to bar recovery against an insolvent, but not bankrupt, employer. The proof of claim requirement was intended by the legislature to ensure that the claimant has taken all necessary steps to protect any potential recovery against his or her bankrupt "employer" (Steel), not to erect some artificial hurdle to recovery by injured employees faced with the unusual situation of an insolvent, but not bankrupt, employer (Erectors).

Here, Erectors is insolvent but has not been subject to a bankruptcy proceeding, voluntary or involuntary. Therefore,

there is no "court of competent jurisdiction" in which an injured Erectors employee can, or could, file a claim. The proof of claim is only necessary to trigger Guaranty Corporation's obligation where the insolvent member is the subject of a bankruptcy proceeding. In this case, because no bankruptcy proceeding against the employer, Erectors, has been initiated, Guaranty Corporation's obligation was triggered by the determination, per the statute, that Erectors, a member of Guaranty Corporation, was *insolvent.*

Guaranty Corporation contends that the statutory requirement of the proof of a bankruptcy claim should be read to require the claimant, as an unsecured creditor of the insolvent employer, band together with other creditors, unsecured or otherwise, and force the employer into bankruptcy, thereby initiating the proceeding in which he can the file his proof of claim. Alternately, the appellant asserts the employee must wait until other creditors force the insolvent employer into bankruptcy, and then the employee can make his claim against the employer and initiate his workers' compensation claim.[2]

■ Guaranty Corporation's contention flies in the face of the purpose of the Workers' Compensation laws to "provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment and to place the burden of such losses on industry." *Bethel v. Sunlight Janitor Serv.,* 551 S.W.2d 616, 618 (Mo. banc 1977). Guaranty Corporation seeks to interpose an additional requirement, not supported by the statute, on employees of insolvent, not bankrupt, members. This proposed requirement is clearly inconsistent with the purpose of

Workers' Compensation and the purpose of Guaranty Corporation itself to protect such employees.

This court notes that this case is not the first in which Guaranty Corporation sought to read into its governing statute an artificial bar to fend off the workers' compensation claims of injured employees of its insolvent members. In a case before the bankruptcy court, Guaranty Corporation sought to avoid paying claims of injured employees made before a member's bankruptcy petition was filed. *In re Wire Rope Corp. of Am., Inc.,* 300 B.R. 1, 3 (Bankr.W.D.Mo.2003). In arguing that it was not required to pay these pre-petition workers' compensation claims, Guaranty Corporation claimed, as here, that it was "required by Missouri State law to deny payment of pre-petition workers' compensation claims unless the claimant timely filed a proof of claim or otherwise preserved his or her rights as a pre-petition claimant in the bankruptcy proceeding." *Id.* at 6. The bankruptcy court concluded that Guaranty Corporation, as here, "apparently decided to gamble under the belief that it could realize more cost-savings by springing a trap on the unwary, often unsophisticated worker." *Id.* at 9.

Guaranty Corporation's argument is unavailing. This court concurs with the *In re Wire Rope* court in its statement:

It is difficult for this court to find the appropriate words to express its distaste for the position taken by Guaranty Corporation. It is quite simply, unconscionable. It spits in the fact of the longstanding public policy of the State of Missouri to protect workers who suffer job-related injuries and then suffer the anguish and uncertainty that surely ac-

---

**2.** Guaranty Corporation cites *Tague v. Missouri Private Sector Individual Self–Insurers Guaranty Corporation,* 186 S.W.3d 469 (Mo. App.2006) in support of its argument. *Tague* is completely inapplicable to the facts of this case.

company the insolvency of their employer.... It creates unnecessary and unjustified anxiety among those injured workers who are in need of continuing medical treatment. To accept and approve the position taken by Guaranty Corporation would be contrary to the spirit of state and federal law and would be grossly unfair and inequitable.

*Id.* at 10.

■ Guaranty Corporation next tries to avoid its obligation to Meadows by claiming, as the ALJ noted, that "no court of competent jurisdiction has declared Havens *Erectors* insolvent." Therefore, Guaranty Corporation argues that it cannot be liable to pay Meadows's claims because the corporation may only administers the workers' compensation claims of insolvent members. Again, Guaranty Corporation's argument has no merit. This court first notes that Guaranty Corporation itself, on November 15, 2005, well before the hearing date, found Erectors insolvent after that corporation pledged all of its assets to secure the funding for Steel. The Director of the Division then adopted Guaranty Corporation's finding and asserted the Division's authority under Section 287.877.2 to declare the employer insolvent. Guaranty Corporation's obligation was thereby triggered by the determination of insolvency.

In summary, Guaranty Corporation, through its Insolvency Fund, is tasked with meeting the workers' compensation claims of its insolvent employer-members. Erectors was a member of Guaranty Corporation. Guaranty Corporation found Erectors to be insolvent, and such finding was adopted by the Division. Erectors has never been the subject of a bankruptcy proceeding. Therefore, no court has jurisdiction over any delinquency or bankruptcy proceeding in which an injured employee of Erectors can file a proof of claim. Therefore, the statutory predicate of a proof of claim is inapplicable. Meadows, an injured employee of Havens Erectors, may recover against Guaranty Corporation's Insolvency Fund on his workers' compensation claims without first filing a proof of claim.[3] Accordingly, the Commission had jurisdiction to enter the award.

Although Guaranty Corporation's proposed interpretation of Section 287.865.5 is untenable in the view of its own statutory purpose and the purpose of the Workers' Compensation Laws, the language the statute itself seems to presuppose that a bankruptcy or delinquency proceeding necessary and naturally follows from a finding of insolvency. As the instant case demonstrates, insolvency, or a finding of insolvency, is separate and distinct from a bankruptcy. In that the statute conflates the two concepts, the language of the statute results in a potential coverage gap for injured employees of insolvent, but not bankrupt, employer-members. In that Guaranty Corporation seeks to exploit this gap to its benefit is unconscionable. This court would respectfully recommend the legislature to address this seeming inconsistency of Section 287.865.5.

■ This matter does not end there. Truman Medical Centers ("TMC") and University Physicians Associates ("UPA") provided medical care to Meadows for his work-related injuries. The medical providers filed a Request for Direct Payment with the Division pursuant to Section

---

**3.** In that a proof of claim is not required for an employee of an insolvent entity not the subject of a bankruptcy or delinquency proceeding in a court of competent jurisdiction, this court need not determine whether the Section amendments to Section 287.865.5, providing that the proof of claim is a jurisdictional prerequisite to filing a workers' compensation claim against a bankrupt employer, should be applied retroactively to this case.

287.140. Neither TMC nor UPA were given any notice of the hearing and were unable to present evidence on their request. Neither the Division nor the Commission ruled on their request. TMC and UPA, as respondents in this action, requested the appeal be dismissed, arguing that the entire controversy between the parties had yet to be resolved.

This court notes that "the Division's interest in providing finality to injured employees, employers, and their insurers is legitimate, it may not advance this interest at the expense of the health care providers' right to have their day in court." *Cox Health Sys. v. Div. of Workers' Comp.*, 190 S.W.3d 623, 629 (Mo.App.2006). However, such right is independent of the underlying Workers' Compensation claim. Therefore, the appeal is properly before this court.

The Commission has yet to rule on the medical provider's request; in the interests of judicial economy, and for a complete determination of the issues in this case, this court remands the case for the sole purpose of disposing of the medical providers' Request for Direct Payment. Accordingly, the Final Order of the Commission is affirmed as to Meadows's workers' compensation award and the case is remanded to the Commission solely for a determination on the Requests for Direct Payment.

All concur.